IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CENT HOLDING COMPANY, LLC, CENT CAPITAL, LLC<br><br>Plaintiffs,<br><br>v.<br><br>WOLFRAM RESEARCH, INC.,<br><br>Defendant. | Case No. 5:21-cv-00418 |

## MOTION TO DISMISS

Defendant Wolfram Research, Inc. ("Wolfram") respectfully submits this motion to dismiss the Complaint for failure to state a claim for which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### I.    INTRODUCTION

Wolfram is the developer of a computational platform for mathematical analysis, including the program called Mathematica and its underlying programming language known as the Wolfram Language. Wolfram's platform is used for all kinds of quantitative analysis. The version best suited for financial analysis is the Wolfram Finance Platform, which, among many documented features, can import data from numerous sources, including data from Bloomberg.[1]

---

[1] *See, e.g.,* https://reference.wolfram.com/language/ref/service/BloombergTerminal.html, copy attached to Decl. of Daniel Konieczny in Supp. of Wolfram's Opp. to Mot. for PI ("Konieczny Decl.") as Ex. 4, publicly disclosing the Bloomberg Terminal service connection feature.

Plaintiff Cent Holding Company, LLC ("Cent Holding") has a license to use various Wolfram products, including the Wolfram Finance Platform, and has engaged Wolfram to provide consulting services regarding those products. Plaintiff Cent Holding claims to have developed a financial analysis tool, currently implemented using the Wolfram Language, that analyzes financial data from Bloomberg and allows "the user to 'beat the market'" and "beat its competitors." Compl. (Dkt. 1) ¶ 12. Wolfram and Cent Holding have entered into a Mutual Non-Disclosure Agreement (the "NDA," Ex. 1) and a Technical Consulting Development Support Contract (the "Consulting Contract," Ex. 2).[2]

In this lawsuit, Plaintiffs assert two distinct theories: a "webinar trade secret disclosure" theory and a "breach of consulting contract" theory. Under both theories, Plaintiffs fail to allege any claim that is "plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Moreover, Plaintiff Cent Capital, LLC ("Cent Capital") has no standing to bring any claim at all, because it is not a party to either contract and does not own the purported trade secret at issue.

For these reasons, and as further stated below, the Court should dismiss the Complaint with prejudice and grant all further appropriate relief.

---

[2] When addressing a motion to dismiss, courts may consider documents not attached to the pleadings if referred to in the complaint and central to the plaintiff's claim. *M5 Mgmt. Servs., Inc. v. Yanac*, 428 F. Supp. 3d 1282, 1288 (N.D. Ala. 2019).

## II. ARGUMENT

Plaintiffs' allegations do not meet federal pleading standards. To survive a motion to dismiss, a complaint must be "plausible on its face," and "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, 570. A plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. To be plausible, a claim must include "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[U]nadorned, the-defendant-unlawfully-harmed me accusation[s]" will not suffice. *Id.*

### A. Plaintiffs fail to state a plausible claim under their webinar trade secret disclosure theory.

Plaintiffs devote nearly the entire Complaint to their theory that Wolfram disclosed a purported trade secret they call "Tabula Rasa" during a webinar posted online in January 2021 (which Wolfram voluntarily removed from its website before Plaintiffs filed their Complaint). The webinar is the sole basis for the claims for breach of the NDA (Count I) and violation of trade secret laws (Count III).[3]

These allegations fail to state a plausible claim for three reasons: (1) the

---

[3] Plaintiffs also rely on the webinar, in part, for Count II. *See* Compl. (Dkt. 1) ¶ 45 ("Wolfram has breached the Consulting Contract by … failing to protect Plaintiffs' confidential information…").

3

allegations of trade secret disclosure are internally inconsistent and contradicted by the webinar video; (2) Plaintiffs provide no specific allegations that satisfy the definition of a trade secret under the law; and (3) there are no factual allegations regarding how Plaintiffs purportedly provided "Tabula Rasa" to Wolfram, or whether Wolfram received it at all.

          **1.**      **The information purportedly disclosed in the webinar is not the same information that Plaintiffs assert is a trade secret.**

First, fundamentally, Plaintiffs' allegations are not plausible because they contradict each other as to what the trade secret purportedly *is* and what was purportedly *disclosed*. One cannot allege a valid claim that *A* is a trade secret and Defendant disclosed *B*. Nevertheless, that is what Plaintiffs attempt to do.

To state a plausible claim under federal law, the allegations must be consistent. *See, e.g., U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1329 (N.D. Ga. 2013) (dismissing claim because "upon closer examination, it becomes clear that these allegations are internally inconsistent, which the Court need not accept as true"); *Shack v. Jenkins,* No. 16-1626, 2017 WL 1017133, at *2 (N.D. Ala. Feb. 23, 2017) ("courts need not accept as true 'internally inconsistent factual claims'"); *cf. Simple Helix, LLC v. Relus Techs., LLC*, No. 20-453, 2020 WL 7401592, at *11 n.9 (N.D. Ala. Dec. 17, 2020) (plaintiff's "allegations foreclose any plausible claims that [defendant] breached a contractual duty") *Roberson Excavation, Inc. v. Dale Cty. Water Auth.*, No. 15-

939, 2016 WL 5799051, at *7 (M.D. Ala. Sept. 9, 2016) (plaintiff "plead[s] himself out of a claim by including unnecessary details contrary to his claims").

The purported trade secret, Tabula Rasa, is described in the Complaint at paragraphs 11-19. According to Plaintiffs, it is a "tool" that "dependably identif[ies] opportunities," "minimize[s] risk," and "prove[s] itself to be consistently profitable under market conditions." Compl. (Dkt. 1) ¶ 11. It "allows a user to take a large amount of real-time market data and analyze and react to market opportunities (across multiple market sectors) faster than any competitors." *Id.* ¶ 12. Cent Holding claims to have "spent months converting over 4,000 documents and files into Wolfram language, in order to create a fully integrated software and documentation architecture that is an industry first." *Id.* ¶ 18. Also, when Cent Holding implemented it in the Wolfram Language, it claims to have "developed a way to integrate the Wolfram language with a Bloomberg Terminal, which no one has ever been able to accomplish before." *Id.* ¶ 19.

In contrast, all the allegations relating to the trade secret *disclosure* are found in paragraph 30, and they make no reference to Tabula Rasa. Paragraph 30 is reproduced below in its entirety:

> In late January, 2021, without Plaintiffs' consent or permission, Wolfram hosted an online "webinar" for more than 400 hedge-fund industry professionals. In this webinar, Wolfram used Plaintiffs' Bloomberg Terminal to demonstrate and pitch (for sale) a new product from Wolfram—the ability to integrate the Wolfram language

> on a Bloomberg Terminal. Wolfram even provided a link to a free download of the product, in essence providing the integration to the entire industry for free because Wolfram would be able to charge each user a hefty license fee for using the Wolfram language.

Here, Plaintiffs allege only that Wolfram discloses "a new product from Wolfram—the ability to integrate the Wolfram language on a Bloomberg Terminal." *Id*. ¶ 30. At most, this disclosure has the same *subject matter* of *one* alleged aspect of Tabula Rasa, a custom-developed "way to integrate the Wolfram language with a Bloomberg Terminal …." *Id*. ¶ 19. Even so, Plaintiffs do not allege that Wolfram disclosed Plaintiffs' custom-developed, purportedly unprecedented integration—rather, Wolfram allegedly disclosed only the "ability" to integrate Bloomberg Terminal data. The "ability" to integrate Bloomberg Terminal data is a well-documented, long-standing feature of the Wolfram Language and the Wolfram Finance Platform.[4]

The allegations in the Complaint are sufficient to establish the contradiction,

---

[4] *See, e.g.*, https://writings.stephenwolfram.com/2019/04/version-12-launches-today-big-jump-for-wolfram-language-and-mathematica/ ("Connecting to Financial Feeds"), copy attached to Konieczny Decl. as Ex. 5; https://www.wheels.org/monkeywrench/?m=201603 ("This interface allows the direct loading of Bloomberg data (historical prices, bulk data like dividends, current data like stock prices, etc.) into Mathematica. I've made the interface freely available since 2008, but this release [in 2016] represents the largest changes in over six years."), copy attached to Konieczny Decl. as Ex. 6. Also, Plaintiffs' employee discussed the ability to integrate Bloomberg Terminal data with the Wolfram Language on Wolfram's publicly available community forum. *See* Wolfram Community post from Luke Jennings, "Visualizing the live tick with Bloomberg Terminal & InteractiveTradingChart," attached to Konieczny Decl. as Ex. 11.

but the video of the webinar makes the contradiction undeniable.[5]

From the video, we learn that the otherwise inexplicable gaps in the allegations in the body of the Complaint in fact are gaping holes:

- There is no "new product"—rather, the webinar is simply a demonstration of the Wolfram Finance Platform, which existed before Plaintiffs began to use Wolfram's products. Video timestamp ("TS") 0:30; Konieczny Decl. Ex. 3 at 2:8-11.

- What was available for download was not a "product" at all but the presenter's "notebook," the document shown on the screen during the presentation. TS 5:30; Konieczny Decl. Ex. 3 at 6:15-24.

- The means for integrating Bloomberg Terminal data in the Wolfram Language shown in the webinar is a single line of code: bbgTerminal = ServiceConnect["BloombergTerminal"]. TS 9:45; Konieczny Decl. Ex. 3 at 10:3-6.

- "ServiceConnect" is a documented, built-in function of the Wolfram Language. TS 10:00; Konieczny Decl. Ex. 3 at 10:8-10 (documentation shown on the screen).[6]

The allegations thus are utterly at odds with the video—the video itself

---

[5] The transcript of the video is attached to Konieczny Decl. as Ex. 3, and a digital copy is being made available to the Court. *See* Konieczny Decl., ¶¶ 4, 6, Ex. 1, 3. The Court can consider the video as part of this motion to dismiss because it is central to Plaintiffs' claims (*e.g.*, Compl. ¶¶ 30-32, 52) and therefore incorporated by reference into the Complaint. *See Cantrell v. McClure*, 805 F. App'x 817, 819 n.2 (11th Cir. 2020) (finding the district court properly relied on video footage referenced in the complaint in granting motion to dismiss); *see also Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690-91 (7th Cir. 2012) ("it makes eminently good sense to extend the [incorporation-by-reference] doctrine to cover [videos]"). The video's contents supersede general allegations or inferences that could be made. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007); *Bogie v. Rosenberg*, 705 F.3d 603, 607-08 (7th Cir. 2013) (affirming dismissal with prejudice based on review of video attached to complaint).

[6] The documentation also is available online, copy attached to Konieczny Decl. as Ex. 7. The online documentation identifies the Bloomberg Terminal as a supported service, copy attached to Konieczny Decl. as Ex. 8.

demonstrates that there was no "new product" being pitched, no "product" at all available for download, and no disclosure of integration with the Bloomberg Terminal other than a single line of publicly documented code.

In sum, the allegations of trade secret disclosure and the contents of the video cannot be reconciled with Plaintiffs' allegations of the trade secret itself. For this reason alone, the Complaint must be dismissed with prejudice

### 2. Plaintiffs fail to plausibly allege that Tabula Rasa is a valid trade secret.

Second, Plaintiffs' claim for violation of trade secret laws should be dismissed for the independent reason that Plaintiffs fail to allege that Tabula Rasa is a protectible trade secret under the Alabama Trade Secret Act (the "ATSA").[7]

To maintain a trade secret claim, a plaintiff "must first establish that it maintained trade secrets, as defined in the ATSA, and that those secrets are at issue." *Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1273 (M.D. Ala. 2010). Under the ATSA, a trade secret is information that:

---

[7] As a threshold matter, the Court must determine which law governs Plaintiffs' claims. To resolve choice-of-law questions in trade secret actions, Alabama applies the law of the "state in which the plaintiff suffered the economic impact." *Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1262 (M.D. Ala. 2009). Accordingly, Alabama law should govern Plaintiffs' trade secrets claim. To the extent Plaintiffs also attempt to bring a claim under the Defend Trade Secrets Act ("DTSA"), it would fail for the same reasons. The DTSA and ATSA define a trade secret and misappropriation similarly. *Compare* 18 U.S.C. § 1839(3) *with* Ala. Code § 8-27-2(1); *compare* 18 U.S.C. § 1839(5) *with* Ala. Code § 8-27-3. *See also S. Field Maint. & Fabrication LLC v. Killough,* No. 18-0581, 2018 WL 4701782, at *2 (M.D. Ala. Oct. 1, 2018). Since Plaintiffs fail to allege that Tabula Rasa is a protectible trade secret under the ATSA, they also fail to allege a protectible trade secret under the DTSA. Both statutes require dismissal of Plaintiffs' claim for violation of trade secret laws.

> (a) is used or intended for use in a trade or business; (b) is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process; (c) is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret; (d) cannot be readily ascertained or derived from publicly available information; (e) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and (f) has significant economic value.

Ala. Code § 8-27-2(1). To survive a motion to dismiss, a plaintiff must allege specific facts to plausibly demonstrate that the information at issue meets each element. *Physiotherapy Assocs., Inc. v. ATI Holdings, LLC*, No. 17-1226, 2019 WL 4415567, at *8 (N.D. Ala. Sept. 16, 2019); *see also Space Data Corp. v. X*, No. 16-3260, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017) (dismissing DTSA claim because conclusory trade secret allegations failed to provide "notice of the boundaries of this case"); *M5 Mgmt. Servs.*, 428 F. Supp. 3d at 1290 (dismissing DTSA claim for failure to adequately allege a trade secret).[8]

Here, while Plaintiffs' allegations regarding Tabula Rasa are sufficient to distinguish it from anything disclosed in the webinar, they are not sufficient to plausibly establish that it: (1) is not publicly known and not generally known in Plaintiffs' trade or business; (2) cannot be readily ascertained or derived from

---

[8] Because the DTSA and ATSA define a trade secret and misappropriation similarly, courts often look to DTSA caselaw for guidance when considering ATSA claims. *See S. Field Maint. & Fabrication LLC,* 2018 WL 4701782, at *2.

9

publicly available information; (3) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; or (4) has significant economic value. Those factors are alleged at most in conclusory allegations (*e.g.*, Compl. (Dkt. 1) ¶ 29 ("prior to this, no one had this information other than Plaintiff Cent Holding")); or in vague marketing hype (*e.g.*, *id.* ¶ 4 ("Not only does Tabula Rasa allow the user to 'beat the market,' it also allows the user to beat its competitors.")). Such conclusory statements are insufficient as a matter of law to allege the existence of a protectible trade secret. *E.g.*, *Mastercraft Decorators, Inc. v. Orlando*, 356 F. Supp. 3d 259, 271 (W.D.N.Y. 2018) (conclusory allegations that information was "internal and proprietary" and "kept confidential" are insufficient to allege secrecy). Accordingly, Count III should be dismissed.

### 3. Plaintiffs fail to allege that they provided Tabula Rasa to Wolfram.

Third, Plaintiffs' breach of NDA and violation of trade secret law claims should be dismissed because they fail to allege how Tabula Rasa was provided to Wolfram—or that it was provided at all. For a violation of the ATSA to occur, the alleged disclosing party necessarily must obtain the alleged trade secret information. *See* Ala. Code. § 8-27-3. Moreover, a trade secret must be "the subject of efforts that are reasonable under the circumstances to maintain its secrecy." Ala. Code § 8-27-2(1)(e). Here, Plaintiffs allege only that "Wolfram gained access" to "Plaintiff Cent Holding's confidential and proprietary company

10

information, including its trade secrets" and "Cent Holding's method of integration with a Bloomberg Terminal." Compl. (Dkt. 1) ¶ 29. Critical omissions include: whether Wolfram actually received Tabula Rasa and whether the means by which Wolfram allegedly "gained access" maintained the information's secrecy.

Likewise, under the NDA, a breach is necessarily predicated on receipt of the specific confidential information that is allegedly disclosed. Multiple provisions of the NDA acknowledge Wolfram's rights to independently develop products that are similar to or compete with the subject matter of any confidential information provided. *See* Ex. 2 §§ 7, 8, 13. Conclusory allegations that Wolfram "gained access" to unspecified information and then disclosed "a new product" relating to the same subject matter do not state a claim for breach of the NDA. At minimum, Plaintiffs must allege that Wolfram received the specific confidential information from Plaintiffs that it allegedly disclosed. For this additional reason, Counts I and III should be dismissed.

### B. Plaintiffs fail to allege any plausible claim for breach of the consulting contract.

Plaintiffs also fail to allege plausible allegations regarding their breach of consulting contract theory (Count II).[9]

---

[9] With respect to contracts, Alabama applies the law of the state where the contract is made, except when the contract includes a choice-of-law provision. *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). The NDA includes a choice-of-law provision specifying Illinois law, but the Consulting Contract contains no choice-of-law

In Count II, Plaintiffs allege that Wolfram breached the Consulting Contract because "Wolfram's deliverable work (the 'milestones/tasks') under the Consulting Contract has been slower than anticipated, and now Wolfram has ceased (or appears to have ceased) performing any meaningful work at all." Compl. ¶ 44 (Dkt. 1). Plaintiffs allege that Wolfram breached by "failing [to] deliver the 'milestone's tasks' as agreed" and "ceasing to perform work." *Id*. ¶ 45. Plaintiffs' allegations are contrary to the Consulting Contract's terms.

The Consulting Contract does not provide deadlines for milestones or tasks or require Wolfram to perform work at Plaintiffs' pleasure. Wolfram agreed to "provide technical consulting Development Support … to Cent Holding … by assigning one or more designated contractor(s) … to work as request is made by the Customer during the period of this Statement of Work." Ex. 2 ¶ 1. The Contract states that "[t]his work will be of advisory or collaborative in nature and Wolfram will not have responsibility for the accuracy or efficiency of any code provided by Wolfram as part of the [Development Support]." *Id.* Requests for work must be made in writing in a specific way, and—critically—Wolfram may accept or reject such requests for any reason "deemed important":

> [Cent Holding] will provide details and specifications of each such work to be covered under this agreement in writing through e-mail to Wolfram, identified in the

---

provision. For purposes of this motion Wolfram assumes that Alabama law applies to the Consulting Contract, but there is no relevant difference between the jurisdictions.

12

> subject heading as "Development Support Request". *Wolfram reserves the right to accept or reject such request based on available resources or any other reason deemed important.*

*Id.* ¶ 4 (emphasis added). Further, the Consulting Contract expressly disclaims that the work will result in "any specific deliverable":

> While Wolfram will undertake commercially reasonable efforts to achieve a successful result for [Cent Holding], Wolfram makes no Warranty that the [Development Support] shall result in any specific deliverable. Further, in no event shall Wolfram be liable for any loss or damages that should result because of the [Development Support], for any amount in excess of the total payment described herein.

*Id.* ¶ 6. In sum, the Consulting Contract is an agreement for Wolfram to provide contractors on an hourly basis to work on to-be-agreed-upon projects in an "advisory or collaborative nature," without guarantees of deadlines or deliverables.

Allegations that work generally has been "slower than anticipated" do not allege a breach of the Consulting Contract's terms described above, and Plaintiffs fail to allege a breach of any specific term or other agreement made in accordance with the Contract. *See Ala. Aircraft Indus., Inc. v. Boeing Co.*, No.11-3577, 2013 WL 1178720, at *12-13 (N.D. Ala. Mar. 20, 2013).

Finally, even if Cent Holding had identified any contractual terms that were allegedly breached and adequately alleged nonperformance, Cent Holding has still not sufficiently alleged any resulting damages. Cent Holding's bare statement that

13

"Wolfram's breach of the Consulting Contract has caused damages" (Compl. (Dkt. 1) ¶ 46) is inadequate. *See Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1341 (N.D. Ala. 2019) (dismissing breach of contract claim where plaintiff merely alleged defendant's actions had injured it); *Ala. Aircraft Indus.*, 2013 WL 1178720, at *13 ("Without a specific contract claim, Plaintiff cannot seek to recover any damages."). For these reasons, Count II should be dismissed.

    C.    **Cent Capital lacks standing to assert any claims.**

Finally, Plaintiff Cent Capital's claims should be dismissed for the additional reason that Cent Capital lacks standing.

Cent Capital is not a party or a signatory to the NDA or the Consulting Contract. Therefore, Cent Capital may enforce the agreements' rights only as an intended third-party beneficiary. *Doyle v. Vill. Of Tinley Park*, 115 N.E.3d 1069, 1076-77 (Ill. App. Ct. 2018); *Allied-Bruce Terminix Cos. v. Butler*, 816 So. 2d 9, 13 (Ala. 2001). A party seeking to recover as a contract's third-party beneficiary must show that the contract was intended for the party's direct (not incidental) benefit. *Doyle*, 115 N.E.3d at 1077 (Ill. App. Ct. 2018); *Long Excavating & Recycling, LLC v. Bates Hewett & Floyd Ins. Agency*, No. 17-0510, 2019 WL 3661781, at *2 (M.D. Ala. Aug. 6, 2019). Here, neither the NDA nor the Consulting Contract even refer to Cent Capital. Although the NDA refers to Wolfram Research, Inc. and its subsidiaries and affiliates, the agreement restricts

14

the term Participant to include only Cent Holding.

As to Count III, a party asserting a trade secrets claim "cannot establish standing unless he can establish that he owned the trade secret." *Acoustic Artistry LLC v. Peavey Elecs. Corp.*, No. 10- 2194, 2012 WL 13019011, at *4 (N.D. Ala. Mar. 30, 2012). Plaintiffs concede that Cent Capital does not own the purported trade secret. *E.g.*, Compl. (Dkt. 1) ¶¶ 9, 29 ("[N]o one had this information other than Plaintiff Cent Holding."). Accordingly, Cent Capital should be dismissed as a party for lack of standing.

### III. CONCLUSION

For the foregoing reasons, Wolfram respectfully requests that the Court dismiss Plaintiffs' Complaint in its entirety and grant all further appropriate relief.

Date: May 7, 2021

Respectfully submitted,

*s/ Floyd D. Gaines*
Floyd D. Gaines
Daniel B. Snyder

*Of Counsel*
Bradford P. Lyerla
Daniel I. Konieczny
Katherine M. O'Brien
Amie M. Bauer
Tabet DiVito & Rothstein LLC
209 S. LaSalle Street. 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
edocket@tdrlawfirm.com

GAINES LLC
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com
dsnyder@gainesllc.com
Office Number: 205.598.5055
Fax Number: 205.598.5066
Floyd Gaines Direct: 205.598.5089
Daniel Snyder Direct: 205.598.5076
*Counsel for the Defendant*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that, on this date, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will serve a copy on all counsel of records, including:

    Kenneth E. Riley
    FARRIS, RILEY & PITT, LLP
    1700 Financial Center
    505 20th Street North
    Birmingham, AL 35203
    Phone: (205) 324-1212
    Email: kriley@frplegal.com

    Gregory A. Brockwell
    BROCKWELL SMITH LLC
    2100 1st Avenue North, Suite 300
    Birmingham, AL 35203
    Phone: (205) 800-8505
    Email: greg@brockwellsmith.com

                                          *s/ Daniel B. Snyder*
                                          Of Counsel