FILED
2021 Jul-26 PM 06:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 4

FILED
2021 May-07 PM 03:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**EXHIBIT 1**

## WOLFRAM RESEARCH, INC. - Mutual Non-Disclosure Agreement

This Mutual Non-Disclosure Agreement ("Agreement") is made by and between Wolfram Research, Inc. for itself and its subsidiaries and affiliates (collectively "Wolfram"), and the "Participant" identified below, collectively referred to as the "Parties".

The Parties wish to exchange Confidential Information (as defined below) for the following reasons (the "Purpose"):
  (i)   to evaluate whether to enter into a contemplated business transaction; and
  (ii)  to share information helpful to developing a strategic partnership

The Parties have entered into this Agreement to protect the confidentiality of information in accordance with the following terms:

1. The Effective Date of this Agreement is December 4, 2020.

2. In connection with the Purpose, the Parties may disclose certain information they consider confidential and/or proprietary ("Confidential Information") to the other Party including, but not limited to, tangible, intangible, oral, written, visual, electronic, present or future information such as: (a) trade secrets, patents, patent applications; (b) financial information, including cost, pricing; (c) technical information, including software (including source and object code), software usage and configuration, hardware configuration, computer programs, algorithms, research, development (either of already released or unreleased products and services), processes, procedures, algorithms, data, designs, ideas, concepts, drawings, engineering, formulate, novel methods, inventions and know-how; (d) business information, including services, customers, clients, data models or specifications, operations, planning, marketing interests, products, business plans, product plans and agreements with third parties; and (e) the terms of any agreement entered into between the Parties and the discussions, negotiations and proposals related thereto.

3. The Party receiving Confidential Information ("Recipient") will only have a duty to protect Confidential Information disclosed to it by the other Party ("Discloser"): (i) if it is clearly and conspicuously marked as "confidential" or with a similar designation; (ii) if it is identified by the Discloser as confidential and/or proprietary before, during, or promptly after presentation or communication; or (iii) if it is disclosed in a manner in which the Discloser reasonably communicated, or the Recipient should reasonably have understood under the circumstances that the disclosure should be treated as confidential, whether or not the specific designation "confidential" or any similar designation is used. Notwithstanding the foregoing, however, all technical information, business plans and pricing information shall be Confidential Information. Either Party maybe a Discloser and/or Recipient.

4. A Recipient will use the Confidential Information only for the Purpose described above. A Recipient will use the same degree of care, but no less than a reasonable degree of care, as the Recipient uses with respect to its own information of a similar nature to protect the Confidential Information. Confidential Information may only be disseminated to employees, directors, agents or third party contractors of Recipient with a need to know and who have first signed an agreement with either of the Parties containing confidentiality provisions substantially similar to those set forth herein.

5. Recipient undertakes to promptly notify Discloser, in writing, of any unauthorized access, disclosure or use of the Confidential Information or any other breach of this Agreement Recipient becomes aware of and will cooperate with Disclosure to regain possession of the Confidential Information and prevent its further unauthorized access, disclosure or use.

6. Each Party agrees that it shall not do the following, except with the advanced review and written approval of the other Party: (a) issue or release any articles, advertising, publicity or other matter relating to this Agreement (including the fact that a meeting or discussion has taken place between the Parties) or mentioning or implying the name of the other Party; or (b) make copies of documents containing Confidential Information.

7. This Agreement imposes no obligation upon a Recipient with respect to Confidential Information that: (i) was known to the Recipient through proper means before receipt from the Discloser; (ii) is or becomes publicly available through no fault of the Recipient; (iii) is rightfully received by the Recipient from a third party without a duty of confidentiality; (iv) is independently developed by the Recipient without a breach of this Agreement; (v) is disclosed by the Recipient with the Discloser's prior written approval; or (vi) is required to be disclosed by operation of law, court order or other governmental demand except that Recipient will disclose only such information as is legally required and will use reasonable efforts, and give prompt notice to Discloser so that Discloser may seek, to obtain confidential treatment for any Confidential Information that is so disclosed.

8. Discloser further acknowledges that the Recipient may currently or in the future be developing information internally, or receiving information from other parties, that is similar to the Discloser's Confidential Information. Accordingly, nothing in this Agreement will be construed as a representation or agreement that the Recipient will not develop or have developed for it products, concepts, systems or techniques that are similar to or compete with the products, concepts, systems or techniques contemplated by or embodied in such Confidential Information, provided that the Recipient does not violate any of its other obligations under this Agreement in connection with such development. This Agreement shall not restrict reassignment of Recipient's employees, nor in any manner affect or limit either party's and future business activities of any nature, including business activities which could be competitive with Discloser.

9. EACH DISCLOSER WARRANTS THAT IT HAS THE RIGHT TO DISCLOSE ITS CONFIDENTIAL INFORMATION. NO OTHER WARRANTIES ARE MADE. ALL CONFIDENTIAL INFORMATION DISCLOSED HEREUNDER IS PROVIDED "AS IS".

10. This Agreement shall remain in effect until it is terminated by either Party with thirty (30) days prior written notice. Notwithstanding the foregoing, this Agreement shall survive with respect to Confidential Information that is disclosed before the effective date of termination. Notwithstanding the foregoing, anything that constitutes a "trade secret" shall remain Confidential Information perpetually.

11. Unless the Parties otherwise agree in writing, a Recipient's duty to protect Confidential Information expires five (5) years from the date of disclosure. Upon termination, or at any such time as Discloser may request in writing, a Recipient, will promptly return or destroy (as requested) all Confidential Information received from the Discloser, together with all copies. Upon written request, Recipient shall certify in writing the destruction or return of such Confidential Information.

12. This Agreement imposes no obligation on the Parties to exchange Confidential Information, proceed with any business opportunity, or purchase, sell, license, transfer or otherwise make use of any technology, services or products.

13. Participant acknowledges that Wolfram is engaged in a broad range of businesses that may be similar to, or identical with Participant's business and that Wolfram has considered, and will consider, the acquisition of, or joint ventures with, other persons or entities that are engaged in businesses similar to, or identical with, Participant's business. Accordingly, Recipient agrees that neither this Agreement, nor Wolfram's consideration of the proposed transaction, will impact or restrict Wolfram's operation of such businesses or their consideration of, or participation in, such transactions. In addition, Participant acknowledges that Wolfram has informed Participant that Wolfram has, and will continue to, work on the development of a wide variety of products and techniques, including products and techniques that may be similar to Participant's products and techniques, and that neither this Agreement, nor Wolfram's consideration of the proposed transaction shall restrict Wolfram's use of the results of such development. Nothing contained in this Agreement will be construed as granting any rights to the Recipient, by license or otherwise, to any of the Discloser's Confidential Information, or the use or commercialization thereof, except as expressly provided in this Agreement.

14. No Party acquires any intellectual property rights under this Agreement (including, but not limited to, patent, copyright, and trademark rights) except the limited rights necessary to carry out the Purpose of this Agreement.

15. Each Party acknowledges that damages for improper disclosure of Confidential Information may be irreparable and not satisfied by monetary damages. Recipient therefore agrees that Discloser shall have the right, in addition to its other rights and remedies, to seek and obtain injunctive relief for any violation of this agreement.

16. This Agreement does not create any agency or partnership relationship. This Agreement is not assignable or transferable.

17. This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and supersedes any prior oral or written agreements, and all contemporaneous oral communications. All additions or modifications to this Agreement must be made in writing and must be signed by the Parties. Any failure to enforce a provision of this Agreement shall not constitute a waiver thereof or of any other provision.

18. This Agreement shall be governed by and construed under the laws of the State of Illinois, without regard to its rules for conflict of laws.

19. The Agreement may be executed in counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same.

20. Both parties shall adhere to all applicable laws, regulations, and rules relating to the export of technical data, and shall not export or re-export any technical data, any products received from Discloser, or the direct product of such technical data to any proscribed country listed in such applicable laws, regulations, and rules unless properly authorized.

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the date indicated below and certify that they are duly authorized to enter into this Agreement and hereby agree on behalf of him or herself and any organization which they represent;

| Wolfram Research, Inc. | Cent Holdings, LLC |
|---|---|
| Signature: *Rebecca Porth* | Signature: *Scott Gillaspie* |
| Name: Rebecca Porth | Name: Scott Gillaspie |
| Title: Director of Finance | Title: CEO |
| Date: February 2, 2021 | Date: 12/7/20 |