
# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

CENT HOLDING COMPANY, LLC,
CENT CAPITAL, LLC,

        Plaintiffs,              Case No. 5:21-cv-00418

        v.                    Judge R. David Proctor

WOLFRAM RESEARCH, INC.,      ORAL ARGUMENT REQUESTED

        Defendant.

## WOLFRAM'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  SUMMARY OF ARGUMENT ......................................................................... 1

    A.   The principal accusation that Plaintiffs make in this lawsuit—that Wolfram disclosed Plaintiffs' trade secrets during a January 2021 webinar—is unfounded. ...........................................................................................................1

    B.   Plaintiffs' fallback theory—that Wolfram incorporated Plaintiffs' trade secret or confidential information into its own software—is unfounded..............................2

    C.   Plaintiffs' suggestions of wrongdoing based on use of Cent's Bloomberg license or "copying" cannot be reconciled with indisputable evidence.........................2

    D.   Plaintiffs' breach of consulting agreement theory is unfounded because Wolfram performed its obligations under the agreement's plain terms. .......................3

III. STATEMENT OF UNDISPUTED FACTS ........................................................ 3

    A.   Plaintiffs do not identify the alleged trade secret that Wolfram purportedly disclosed. Based on the undisputed evidence, no such disclosure ever occurred..............................................................................................................3

    B.   Plaintiffs do not identify any changes to Wolfram's software that purportedly incorporated Plaintiffs' trade secrets. Based on the undisputed evidence, Wolfram has not made any relevant changes to its own software at all. ......................8

    C.   Plaintiffs do not identify any of their own source code they provided that showed a new way to access Bloomberg Terminal data, and the undisputed evidence shows that they never provided any such code to Wolfram. ........................10

    D.   Wolfram has a documented license to access Bloomberg Terminal data, and Wolfram used its own license—not Plaintiffs' license—to develop and release its own built-in commands to access Bloomberg Terminal data. ...............................11

    E.   Plaintiffs do not identify how "the manner in which Plaintiffs combined and used" Wolfram's own built-in commands constitutes a trade secret, and Plaintiffs' employee posted questions online regarding activities that Plaintiffs now allege are trade secrets. ...................................................................................11

    F.   Wolfram's consulting agreement with Cent Holding expressly did not guarantee specific results or further work.................................................................12

    G.   In discovery, Plaintiffs identified only five additional lines of example code shown during the January 2021 webinar (and code outputs) as being at issue,

none of which disclose any trade secret or confidential information. .........................13

H.  In discovery, Plaintiffs asserted that their trade secrets or confidential
information could have been incorporated into certain files, but those files
either are not relevant to the features at issue or were not materially changed. ..........15

I.  Contrary to Plaintiffs' assertions that Wolfram made changes to Wolfram's
own software to enable the features disclosed during the January 2021
webinar, those features work in all relevant versions of Wolfram's software.............16

IV.  ARGUMENT.................................................................................................................... 16

A.  Plaintiffs fail to state a plausible claim under their webinar trade secret
disclosure theory, and the undisputed evidence establishes that no trade secret
was disclosed. ............................................................................................................17

B.  Plaintiffs fail to state a plausible claim under their fallback theory that
Wolfram incorporated Plaintiffs' trade secrets into Wolfram's software, and
the undisputed evidence establishes that it did not happen........................................20

C.  Plaintiffs' various circumstantial allegations of wrongdoing cannot be
reconciled with indisputable evidence. ......................................................................23

D.  Plaintiffs still fail to assert any plausible claim for breach of the consulting
agreement, based on the plain language of the agreement..........................................24

V.  CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*American Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*,
    315 F. Supp. 3d 1044 (N.D. Ill. 2018) .................................................................................20

*Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*,
    690 F. Supp. 2d 1267 (M.D. Ala. 2010) .............................................................................19

*Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*,
    No. 01-20813, 2007 WL 2429653 (N.D. Cal. Aug. 24, 2007) ...............................................22

*Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co.*,
    No. 15-2926, 2019 WL 5694256 (E.D.N.Y. July 22, 2019)....................................................21

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)...........................................................................................16, 17

*Chapman v. AI Transp.*,
    229 F.3d 1012 (11th Cir. 2000) ........................................................................................16

*Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*,
    358 F.3d 1306 (11th Cir. 2004) ........................................................................................24

*DropzoneMS, LLC v. Cockayne*,
    No. 16-2348, 2019 WL 7630788 (D. Or. Sept. 12, 2019) ....................................................22

*Movie Gallery US, LLC v. Greenshields*,
    648 F. Supp. 2d 1252 (M.D. Ala. 2009) .............................................................................18

*Next Commc'ns, Inc. v. Viber Media, Inc.*,
    758 F. App'x 46 (2d Cir. 2018) ........................................................................................21

*NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*,
    No. 17-8829, 2020 WL 2836778 (N.D. Ill. May 31, 2020)....................................................18

*Nimbus Technologies, Inc. v. SunnData Products, Inc.*,
    No. 04-0312, 2005 WL 6133373 (N.D. Ala. Dec. 7, 2005) ...................................................19

*Packaging Corp. of Am., Inc. v. Croner*,
    419 F. Supp. 3d 1059 (N.D. Ill. 2020) ...............................................................................19

*Roberson Excavation, Inc. v. Dale Cty. Water Auth.*,
    No. 15-939, 2016 WL 5799051 (M.D. Ala. Sept. 9, 2016) ...................................................18

*S. Field Maint. & Fabrication LLC v. Killough*,
    No. 18-0581, 2018 WL 4701782 (M.D. Ala. Oct. 1, 2018) ..............................................18, 19

*U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*,
    972 F. Supp. 2d 1317 (N.D. Ga. 2013) ...................................................................17

*Shack v. Jenkins*,
    No. 16-1626, 2017 WL 1017133 (N.D. Ala. Feb. 23, 2017) ....................................17

*Simple Helix, LLC v. Relus Techs., LLC*,
    No. 20-453, 2020 WL 7401592 (N.D. Ala. Dec. 17, 2020) .....................................17

*Web Commc'ns Grp., Inc. v. Gateway 2000, Inc.*,
    889 F. Supp. 316 (N.D. Ill. 1995) .........................................................................20

**Statutes**

765 ILCS 1065/2(b), (d) ...........................................................................................19

18 U.S.C. § 1839(3) ..................................................................................................18

Ala. Code §§ 8-27-2(1), 8-27-3 .................................................................................19

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Wolfram Research, Inc. ("Wolfram") respectfully requests that the Court enter final judgment in Wolfram's favor and against Plaintiffs Cent Holding Company, LLC and Cent Capital, LLC (collectively, "Plaintiffs") on all counts of Plaintiffs' amended complaint.

## I. INTRODUCTION

For approximately six months, the parties have conducted discovery regarding the identity of the purported trade secret or confidential information that Plaintiffs contend Wolfram disclosed during a January 2021 webinar or otherwise. Discovery now has confirmed that the allegations have no basis in fact. While Plaintiffs no doubt will wish to continue to search for a reason to prolong the lawsuit, there are no material factual disputes as to the claims that Plaintiffs alleged. The Court should enter judgment against Plaintiffs on all counts without further delay.

## II. SUMMARY OF ARGUMENT

Plaintiffs' amended complaint asserts claims for breach of a non-disclosure agreement between Cent Holding and Wolfram (Count I), breach of a consulting agreement between Cent Holding and Wolfram (Count II), and violation of the federal Defend Trade Secrets Act ("DTSA") and the Illinois Trade Secrets Act ("ITSA") (Count III). As described below, each claim is meritless based on the material, undisputed facts.

**A. The principal accusation that Plaintiffs make in this lawsuit—that Wolfram disclosed Plaintiffs' trade secrets during a January 2021 webinar—is unfounded.**

Plaintiffs' core allegation, on which all three counts are based, is that Wolfram wrongfully disclosed Plaintiffs' trade secrets or confidential information during a January 2021 webinar. Unsurprisingly, discovery has confirmed that no purported trade secret or other confidential information was disclosed during the January 2021 webinar. The webinar video has been available since the beginning of this lawsuit, but discovery now has narrowed the window

for a wrongful disclosure to just a few minutes of that video. None of Plaintiffs' confidential or trade secret information appears in those moments. The content presented in the webinar either tracks examples found in Wolfram's own preexisting software documentation, or it demonstrates how to rearrange and display data using Wolfram's built-in functions.

**B.      Plaintiffs' fallback theory—that Wolfram incorporated Plaintiffs' trade secret or confidential information into its own software—is unfounded.**

In light of the absence of any trade secret or confidential information from Plaintiffs in the January 2021 webinar, Plaintiffs pivot to an argument that Wolfram made changes to its own software based on Plaintiffs' trade secrets and confidential information, and then Wolfram disclosed those changes. There are numerous problems with this argument, among them the indisputable fact that Wolfram's software *did not change in any material way*. The source code changelogs—which Wolfram voluntarily disclosed before Plaintiffs filed their amended complaint—show only one change of any kind in the relevant period, and that change has nothing to do with Plaintiffs' purported trade secret or confidential information. Again unsurprisingly, discovery has confirmed what already is evident from the relevant source code, most of which is available to any licensed user of Wolfram's software, including Plaintiffs.

**C.      Plaintiffs' suggestions of wrongdoing based on use of Cent's Bloomberg license or "copying" cannot be reconciled with indisputable evidence.**

In the absence of any evidence to support their claims, Plaintiffs turn to asserting what they suggest is circumstantial evidence of wrongdoing.  For example, Plaintiffs take issue with a Wolfram employee using Cent's license to access Bloomberg market data, some of which appears in the output cells of the January 2021 webinar, but this is not even Plaintiffs' information, let alone Plaintiffs' confidential or trade secret information. Anyone else with a license to Bloomberg's data, including Wolfram, had access to it. Also, Plaintiffs contend that material was "copied" into the January 2021 webinar from another document they claim as their

own, but in fact the source document was authored by Wolfram and sent to Plaintiffs, not the other way around. Plaintiffs raised numerous additional theories in discovery, and no doubt some will be raised in response to this motion, but none have evidentiary support.

**D.    Plaintiffs' breach of consulting agreement theory is unfounded because Wolfram performed its obligations under the agreement's plain terms.**

Finally, Count II also is based on the additional theory that Wolfram breached the consulting agreement by "failing to deliver the 'milestones/tasks' as agreed" and "ceasing to perform work" under the consulting agreement. (Am Compl. (Doc. 47) ¶ 119.) To the contrary, under the plain language of the agreement, Wolfram fully performed by providing personnel to consult on an hourly basis. Though in fact Wolfram also provided deliverables to Plaintiffs, the agreement expressly did not guarantee a specific deliverable or outcome.

## III.    STATEMENT OF UNDISPUTED FACTS

**A.    Plaintiffs do not identify the alleged trade secret that Wolfram purportedly disclosed. Based on the undisputed evidence, no such disclosure ever occurred.**

1.    Plaintiffs allege that Wolfram disclosed Plaintiffs' "Trade Secret and proprietary information" during a series of webinars beginning on January 27, 2021, and that the purported disclosure caused them irreparable harm. (Am. Compl. (Doc. 47) ¶¶ 2, 93-103, 110, 131, 134.)

2.    For example, Plaintiffs allege that "[b]y providing access to Cent's Trade Secrets, including the infrastructure components and the architecture components, this unauthorized disclosure by Defendant now provides a technical vehicle for these participants to apply and develop their own algorithm components possibly competing with Cent's analysis components, including Cent's proprietary algorithms, thereby causing nonquantifiable irreparable harm to Plaintiffs." (Am. Compl. (Doc. 47) ¶ 100.)

3.    Wolfram voluntarily provided Plaintiffs with the videos from each of the three webinars that Plaintiffs identified, as well as the notebook used during the first webinar in

January 2021, and the materials distributed to January 2021 webinar participants. (Declaration of Daniel Konieczny ("Konieczny Decl.") (Evidentiary Submission ("Evd.") Ex. 1) ¶¶ 2-9; Declaration of Eric Schacht ("Schacht Decl.") (Evd. Ex. 2) ¶¶ 2-11; Jan. 2021 webinar video (Evd. Ex. 4); May 2021 webinar video (Evd. Ex. 5); July 2021 webinar video (Evd. Ex. 6); Transcript of Jan. 2021 webinar (Evd. Ex. 7); Notebook used in Jan. 2021 webinar (last edited in Feb. 2021) ("Jan. 2021 Webinar Notebook") (Evd. Ex. 8); Materials provided to Jan. 2021 webinar participants (last edited July 16, 2020) (Evd. Ex. 9).) The video produced is accurate and complete. (Konieczny Decl. (Evd. Ex. 1) at ¶ 22; Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 78:17-19.)

4.      Despite having all the information Wolfram provided, and despite Plaintiffs' repeated allegations of the alleged disclosure causing irreparable harm, Plaintiffs identified only four lines of code (and corresponding output) in their amended complaint as allegedly disclosing a trade secret, found in three "cells" of the presentation notebook used in the January 2021 webinar. (Am. Compl. (Doc. 47) ¶ 92.)[1]

5.      The single line of code in the first cell identified by Plaintiffs is as follows:



 (Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 5.)

6.      The same command, other than how the result is stored in a variable, is found in the preexisting documentation for Wolfram's own BloombergTerminal service connection:



---

[1] In discovery, Plaintiffs have identified two more lines of example code that were allegedly "copied" (along with the example output) and three additional lines that allegedly reflect Plaintiffs' confidential information, which are addressed below. (*See, infra,* § III.G.)

(Konieczny Decl. (Evd. Ex. 1) ¶¶ 10-11; Schacht Decl. (Evd. Ex. 2) ¶ 12; "BloombergTerminal service connection" from Wolfram Finance Platform version 3.1 (Evd. Ex. 10) at 3.).

7.     The same command, other than a difference in a variable name, is found in additional documentation for Wolfram's BloombergTerminal service connection, authored by Wolfram software developer Fahim Chandurwala in 2018 and 2019:



(Declaration of Fahim Chandurwala ("Chandurwala Decl.") (Evd. Ex. 3) ¶ 4; RequestingMarketData-ServiceFramework.nb (last edited Dec. 11, 2019) (Evd. Ex. 11) at 2.) Plaintiffs did not come up with the variable name "bbgTerminal," send it to Wolfram in a document, or instruct Wolfram to use it.  (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 102:10-22.)

8.     The two lines of code in the second cell identified by Plaintiffs are as follows:



(Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 4-5.)

9.     Those lines also appear in Wolfram's documentation (one differs only in options and variable names):

(RequestingMarketData-ServiceFramework.nb (Evd. Ex. 11) at 9.)



(Wolfram documentation page for the "BloombergTerminal service connection" from the Wolfram Finance Platform version 3.1 (last modified on July 7, 2020) (Evd. Ex. 10) at 6.)

10.     The single line of code in the third cell identified by Plaintiffs is as follows:



(Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 7.)

11.     The same command, other than differences in options used, appears in Wolfram's preexisting documentation:



(RequestingMarketData-ServiceFramework.nb (Evd. Ex. 11) at 12.)

12.     The lines of code that Plaintiffs identified, and all other code in the section of the notebook titled "Bloomberg Terminal," either demonstrate Wolfram's built-in commands for using the BloombergTerminal service connection or demonstrate other built-in commands to manipulate and display data, such as "Keys," "Drop," "TimeSeries," "DateListPlot," "TradingChart," "Normal," "Values," and "Transpose." (Chandurwala Decl. (Evd. Ex. 3) ¶ 5.)

These are all documented features of Wolfram's software that preexisted Cent's involvement with Wolfram. (*Id.*)

13.     Wolfram's preexisting documentation does not disclose Plaintiffs' trade secrets or confidential information (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 52:3-53:7 (BloombergTerminal documentation), 64:21-65:2 (RequestingMarketData-ServiceFramework.nb).) Plaintiffs do not allege or disclose in discovery how any of the differences in options or variable names between the code they identify in the January 2021 webinar and the code showing the same commands in Wolfram's preexisting documentation are material in any way.

14.     The differences between the code identified by Plaintiffs and the code found in Wolfram's preexisting documentation consist of: (1) choosing whether to store the result of a built-in command in a named variable; (2) choosing a different name for a variable; (3) choosing different Bloomberg data fields to request; and (4) choosing different parameters for the commands. (Chandurwala Decl. (Evd. Ex. 3) ¶ 6.) Such choices are arbitrary and do not disclose anything more than how to use Wolfram's own built-in commands. (*Id.*)

15.     As stated in Bloomberg's publicly available documentation, information about Bloomberg field names can be searched using the Bloomberg Terminal data connection, including through the Bloomberg Open API. (Konieczny Decl. (Evd. Ex. 1) ¶ 12; Aug. 30, 2016 Bloomberg Open API Core developer guide (Evd. Ex. 12) at 45-49 (accessing field information via Bloomberg Open API), 92 ("OPT_CHAIN")).) The Bloomberg field "OPT_CHAIN" in particular is found in an example in the user guide for the Bloomberg Open API. (*Id.*)

16.     Other than the four lines shown above, Plaintiffs do not allege in the amended complaint any specific part of the January, May, or July 2021 webinars, or any notebook shown during webinar, or any materials provided to webinar participants, that Plaintiffs contend

disclose their trade secrets or confidential information. In discovery, Plaintiffs identified five additional lines of code, which are addressed below at III.G.

17. Contrary to Plaintiffs' general allegations that the materials provided to the January 2021 webinar participants disclosed Plaintiffs' trade secrets, those materials consisted of a prior version of the presentation notebook, last edited on July 16, 2020, before Plaintiffs' involvement with Wolfram. (Konieczny Decl. (Evd. Ex. 1) ¶ 9; Schacht Decl. (Evd. Ex. 2) ¶ 11; Materials provided to Jan. 2021 webinar participants (last edited on July 16, 2020) (Evd. Ex. 9).)

18. The materials provided to the January 2021 webinar participants are substantially identical to the notebook used for Wolfram's August 13, 2020 webinar on the same topic. (Konieczny Decl. (Evd. Ex. 1) ¶¶ 13-14; Schacht Decl. (Evd. Ex. 2) ¶ 11; August 2020 webinar video (Evd. Ex. 13); *compare* Materials provided to Jan. 2021 webinar participants (last edited on July 16, 2020) (Evd. Ex. 9) *with* Notebook used in August 2020 webinar (Evd. Ex. 14).) The notebook Wolfram identified as having been provided to participants does not disclose Plaintiffs' trade secret or confidential information. (Konieczny Decl. (Evd. Ex. 1 at ¶ 20.); Pls.' Supp. Resp. to Interrog. No. 2 (Evd. Ex. 22) at 9.)

**B.** **Plaintiffs do not identify any changes to Wolfram's software that purportedly incorporated Plaintiffs' trade secrets. Based on the undisputed evidence, Wolfram has not made any relevant changes to its own software at all.**

19. In the amended complaint, Plaintiffs allege the existence of a "new fully functional Bloomberg Desktop API connection developed by Plaintiffs under contract with Defendant." (Am. Compl. (Doc. 47) ¶ 32; *see also id.* ¶¶ 76, 81, 88-89, 97, 100, 103, 114, 117, 129, 133.)

20. Plaintiffs contrast the purported "new fully functional Bloomberg Desktop API" with Wolfram's "BloombergLink" built-in commands, which Plaintiffs allege "simply did not work." (Am. Compl. (Doc. 47) ¶ 88; *see also id.* ¶¶ 49, 50, 52, 55, 57, 60-61, 69, 89, 96-97.)

21.     Plaintiffs also contrast the purported "new fully functional Bloomberg Desktop API" with something Plaintiffs refer to as "Defendant's prior version of the 'Service Connection ["BloombergTerminal"]'." (Am. Compl. (Doc. 47) ¶¶ 96-97, 117.)

22.     Despite being a licensed user of Wolfram's software, and despite that Wolfram has made prior versions of its software available, Plaintiffs do not allege any functionality that has changed in Wolfram's software after Plaintiffs allegedly first disclosed trade secret information on November 27, 2020. (Konieczny Decl. (Evd. Ex. 1) ¶ 10; Schacht Decl. (Evd. Ex. 2) ¶ 12; Am. Compl. (Doc. 47) ¶¶ 77-79, 81.) In discovery, when asked for a list of statements that demonstrate each feature that purportedly changed, Plaintiffs did not provide it, instead referring Wolfram to documents such as the entire January 2021 webinar notebook. (Konieczny Decl. (Evd. Ex. 1) at ¶ 21; Pls.' Resp. to Interrog. No. 8 (Evd. Ex. 23) at 2).

23.     In fact, neither Wolfram's BloombergTerminal service connection nor BloombergLink built-in commands changed at all from November 27, 2020 to the present, as confirmed by changelogs for Wolfram's source code for that period. (Chandurwala Decl. (Evd. Ex. 3) ¶ 7; Changelog for Wolfram's source code for the BloombergTerminal service connection ("BLPAPILink") and the BloombergLink built-in commands (Evd. Ex. 15) at 1.)

24.     From November 27, 2020 to the present, only one change was made to the source code for the BloombergTerminal built-in commands, which Wolfram refers to internally as "BLPAPILink." (Chandurwala Decl. (Evd. Ex. 3) ¶¶ 7-8; Changelog for BloombergTerminal service connection (Evd. Ex. 15) at 1; Screenshots of change to code for BloombergTerminal service connection from November 27, 2020 to the present. (Evd. Ex. 16) at 1-2.)

25.     The only change was to add the option 'Method -> "Legacy"' to the built-in function "ValueQ," to preserve the existing behavior of that function, which changed in Mathematica Version 12.2. (Chandurwala Decl. (Evd. Ex. 3) ¶ 8; Screenshots of change to

source code for BloombergTerminal service connection from November 27, 2020 to the present. (Evd. Ex. 16) at 1-2; Konieczny Decl. (Evd. Ex. 1) ¶ 15; Mathematica Version 12.2 Documentation Page for ValueQ (Evd. Ex. 17) at 1.) Plaintiffs never discussed the function ValueQ with anyone at Wolfram. (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 181:12-19.)

26. No changes at all to the BloombergLink source code were made from November 27, 2020 to the present. (Changelog for BloombergLink built-in commands (Evd. Ex. 15) at 1.)

**C.      Plaintiffs do not identify any of their own source code they provided that showed a new way to access Bloomberg Terminal data, and the undisputed evidence shows that they never provided any such code to Wolfram.**

27. Plaintiffs allege that Wolfram "took" Plaintiffs' trade secrets for use in Wolfram's own software, for example: "Defendant took the infrastructure and the architecture components provided by Cent, using Cent's proprietary ideas, to form the 'new' fully functional Desktop API and the use cases thereof." (Am. Compl. (Doc. 47) ¶ 97, *see also id.* ¶¶ 6, 98, 130.)

28. Specifically, Plaintiffs allege that they provided "Trade Secret code" to Wolfram on November 27, 2020 and December 3, 2020. (Am. Compl. (Doc. 47) ¶ 81.)

29. Plaintiffs do not identify any "components provided by Cent, using Cent's proprietary ideas" that were incorporated into Wolfram's software. Plaintiffs have not found a single line of code that was written by Cent in source code files installed with Wolfram's software. (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 170:8-11.)[2]

30. In fact, the code that Plaintiff' provided used Wolfram's own built-in commands associated with "BloombergLink": "BloombergDesktopAPISource," "MarketDataConnect," "MarketDataGet," "MarketDataSubscriptions," "MarketDataSubscribe," and

---

[2] Plaintiffs have asserted, without basis, that their trade secret or confidential information might be found in certain precompiled files, addressed below. (*See, infra,* § III.H.)

"MarketDataSubscriptionStart," which Plaintiffs elsewhere allege "simply did not work." (Am. Compl. (Doc. 47) ¶ 88; Konieczny Decl. (Evd. Ex. 1) ¶¶ 16-17; Wolfram Finance Platform Version 3.1 Tutorial for BloombergLink (Evd. Ex. 18) at 5, 22-46.)

**D.     Wolfram has a documented license to access Bloomberg Terminal data, and Wolfram used its own license—not Plaintiffs' license—to develop and release its own built-in commands to access Bloomberg Terminal data.**

31.     Plaintiffs allege that Wolfram used Plaintiffs' Bloomberg license to improve its built-in functions to access Bloomberg Terminal data. (Am Compl. (Doc. 47) ¶ 68.)

32.     Contrary to Plaintiffs' allegation that "Defendant has not provided proof of a Bloomberg Terminal License agreement on or before the 'Alleged' release date of this capability [the BloombergTerminal service connection] in 2019" (Am. Compl. (Doc. 47) ¶ 117), Wolfram has disclosed its Bloomberg Development License (executed September 10, 2011) to Plaintiffs. (Schacht Decl. (Evd. Ex. 2) ¶ 13; Sep. 10, 2011 Bloomberg Development License Schedule of Services (Evd. Ex. 19) at 4.)

33.     Wolfram's software developer used Wolfram's own Bloomberg Development License, not Plaintiffs' license, to develop the BloombergTerminal service connection in 2018 and 2019. (Chandurwala Decl. (Evd. Ex. 3) ¶¶ 9-10.)

**E.     Plaintiffs do not identify how "the manner in which Plaintiffs combined and used" Wolfram's own built-in commands constitutes a trade secret, and Plaintiffs' employee posted questions online regarding activities that Plaintiffs now allege are trade secrets.**

34.     Plaintiffs allege that its trade secret may be a novel combination of publicly available, preexisting elements. (Am. Compl. (Doc. 47) ¶ 3.)

35.     Plaintiffs do not identify what "manner in which Plaintiffs combined and used" Wolfram's own commands purportedly is a trade secret, or how any such combination was disclosed by Wolfram in its webinars or otherwise.

36.     The example provided by Plaintiffs, "the manner in which Cent combines real-time and historical data analysis across an entire market using multiple data sources for the purposes of constructing dynamic trading portfolios," is the subject of a publicly available online Wolfram community post by Plaintiffs' employee Luke Jennings, who asked "Does anyone have existing code that takes in historical data from [B]loomberg and updates and visualizes the live ticks coming in on the InteractiveTradingChart? Basically emulating a live chart that will even update any indicators that are on the chart as well?" (Konieczny Decl. (Evd. Ex. 1) ¶ 18; Nov. 2020 Luke Jennings Wolfram Community Q&A, "Visualizing the live tick with Bloomberg Terminal & InteractiveTradingChart" (Evd. Ex. 20) at 1.)

**F.      Wolfram's consulting agreement with Cent Holding expressly did not guarantee specific results or further work.**

37.     In the consulting agreement between Wolfram and Cent Holding, Wolfram agreed to "provide technical consulting Development Support … to Cent Holding … by assigning one or more designated contractor(s) … to work as request is made by the Customer during the period of this Statement of Work." (Schacht Decl. (Evd. Ex. 2) ¶ 14; Technical Consulting Development Support Contract (Evd. Ex. 21) at 1.) The agreement states that "[t]his work will be … advisory or collaborative in nature and Wolfram will not have responsibility for the accuracy or efficiency of any code provided by Wolfram as part of the [Development Support]." (*Id.*)

38.     Requests for work must be made in writing in a specific way, and Wolfram may accept or reject such requests for any reason "deemed important." (Technical Consulting Development Support Contract (Evd. Ex. 21) at 1.)

39.     The consulting agreement expressly disclaims that the work will result in "any specific deliverable." (Technical Consulting Development Support Contract (Evd. Ex. 21) at 1.)

40.     The consulting agreement expressly limits Wolfram's liability to the amount that Plaintiffs paid to Wolfram under the agreement. (Technical Consulting Development Support Contract (Evd. Ex. 21) at 1.)

41.     Plaintiffs paid a total of $16,600 for all services provided by Wolfram under the consulting agreement. (Schacht Decl. (Evd. Ex. 2) ¶ 15.) Plaintiffs contend that an additional approximately $1,800 of payments for licenses for Wolfram's software was associated with billable hour time spent on the consulting project.  (Konieczny Decl. (Evd. Ex. 1) at ¶ 23; Gillaspie Dep. (Evd. Ex. 25) at 19:19-23.)

**G.     In discovery, Plaintiffs identified only five additional lines of example code shown during the January 2021 webinar (and code outputs) as being at issue, none of which disclose any trade secret or confidential information.**

42.     Plaintiffs identified the following additional line of code they contend was "copied" from a notebook Wolfram provided to Plaintiffs into the January 2021 webinar.



(Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 7; Pls.' Mot. for PI, Ex. P (Doc. 53-16) at 11.)

43.     The same command, other than a difference in variable names and whether the result is stored in a variable, appears in Wolfram's preexisting documentation:

(RequestingMarketData-ServiceFramework.nb (Evd. Ex. 11) at 22.)

44.     Plaintiffs identified the following additional line of code they contend was "copied" from a notebook Wolfram provided to Plaintiffs into the January 2021 webinar:



(Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 7; Pls.' Mot. for PI, Ex. P (Doc. 53-16) at 11.)

45.     This line of code demonstrates one of Wolfram's built-in commands for displaying data, namely "DateListPlot," which is a documented feature of Wolfram's software that existed before November 27, 2020.  (Chandurwala Decl. (Evd. Ex. 3) ¶ 5.)

46.     Plaintiffs identified the following three lines of code that they contend show that Wolfram copied Plaintiffs' code "in less blatant forms" (Pl.'s Mot. for PI (Doc. 53) at 18):

(Jan. 2021 Webinar Notebook (Evd. Ex. 8) at 8-9; Pl.'s Mot. for PI (Doc. 53) at 19.)

47.     The lines of code above demonstrate Wolfram's built-in commands to manipulate and display data, namely as "Keys," "Drop," "TimeSeries," "TradingChart," "Normal," "Values," and "Transpose," which are documented features of Wolfram's software that existed before November 27, 2020. (Chandurwala Decl. (Evd. Ex. 3) ¶ 5.)

48.     All that is happening in the lines of code above is that Wolfram functions are being called in a way to rearrange the data so it can be entered or fed into the TradingChart function. (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 302:15-22.) TradingChart is a built-in function that Wolfram developed, not Plaintiffs.  (*Id.* at 301:15-302:1.)

49.     Plaintiffs also identified the cells showing the output of the example code described above as having been "copied." (Pl.'s Mot. for PI, Ex. P (Doc. 53-16) at 3, 5, 7, 9, 11, 13.) As is evident from the January webinar notebook the only information "disclosed" in these cells are excerpts of historical market data and a chart of "MSFT Tick data Returns" from 10:00 AM to 10:05 AM on January 19, 2021. The market data is publicly available for purchase for anyone who purchases the Bloomberg Terminal subscription. (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 262-2-7.)  The commands used to generate the "MSFT Tick data Returns" are not part of the January webinar.  (*Id.* at 138:23-139:3.)

50.     The notebooks from which Plaintiffs contend that the above code was "copied" are found in emails from Wolfram employee Dr. Michael Kelly to Plaintiffs' employees. (Konieczny Decl. (Evd. Ex. 1) at ¶ 19.) Plaintiffs have not produced any version of these notebooks that were sent from Plaintiffs' employees to Wolfram.  (*Id.*)

**H.     In discovery, Plaintiffs asserted that their trade secrets or confidential information could have been incorporated into certain files, but those files either are not relevant to the features at issue or were not materially changed.**

51.     In the human-readable source code files available to Plaintiffs, Plaintiffs have not found a single line of code that was written by Plaintiffs.  (Pls.' 30(b)(6) Dep. (Evd. Ex. 24) at 170:8-11.)  In response to questioning regarding any other Wolfram files that have changed that relate to this case, Plaintiffs identified a list of "dll" and "exe" files that are installed as part of Wolfram's software. (Gillaspie Dep. (Evd. Ex. 25) at 103:7-105:21; Konieczny Decl. (Evd. Ex. 1) at ¶ 24; Feb. 25, 2022 Ltr. from Richie to Konieczny (Evd. Ex. 26).)

52.     Of the files identified, one file is generated and made freely available by Bloomberg, and the remaining files either show no changes that incorporate Plaintiffs' trade secret or confidential information or contain no information specific to Bloomberg or the Bloomberg Terminal service connection at all.  (Chandurwala Decl. (Evd. Ex. 3) ¶¶ 11-16*; Add'l screenshots of changes to source code (Evd. Ex. 27; Evd. Ex. 28).

**I.     Contrary to Plaintiffs' assertions that Wolfram made changes to Wolfram's own software to enable the features disclosed during the January 2021 webinar, those features work in all relevant versions of Wolfram's software.**

53.     Plaintiffs have contended that certain lines of code that were allegedly copied into the January 2021 webinar from another notebook in fact did not work in previous versions of Wolfram's software or with Wolfram's Development Bloomberg license. (*See, e.g.*, Gillaspie Dep. (Evd. Ex. 25) at 86:14-87:16.) In fact, a notebook containing numerous examples of code identical or similar to the lines allegedly copied evaluates without errors in all relevant versions of Wolfram's software.  (Chandurwala Decl. (Evd. Ex. 3) ¶ 17; Notebook output for Wolfram Finance Platform versions 3.1.1, 3.2, 3.3, and 13.0.1 (Evd. Ex. 29-32).)

## IV.     ARGUMENT

Plaintiffs' claims fail to meet Rule 56 standards. Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to

interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed.R.Civ.P. 56(e)).

Here, Plaintiffs' claims fail under Rules 56 because Plaintiffs have not adequately alleged what trade secret (or other confidential information) is at issue, and the undisputed facts establish that Wolfram did not disclose a trade secret (or other confidential information) in its webinars— or incorporate such information into its own software. Regarding the breach of consulting agreement claim, the plain terms of the agreement disclaim any specific outcome, and Plaintiffs do not allege that they did not receive what they paid for—at most approximately $18,400 worth of consulting time from Wolfram's employees.

## A. Plaintiffs fail to state a plausible claim under their webinar trade secret disclosure theory, and the undisputed evidence establishes that no trade secret was disclosed.

In the amended complaint, Plaintiffs still do not reconcile the difference between, on the one hand, what Plaintiffs' alleged trade secret is, *i.e.*, "Tabula Rasa," and, on the other hand, what Wolfram disclosed in the January 2021 webinar, *i.e.*, Wolfram's own, preexisting built-in software commands. Plaintiffs add many allegations that elaborate on the nature and various components of Tabula Rasa, but none of those allegations correspond to anything that was disclosed by Wolfram in the January 2021 webinar (or otherwise). To state a plausible claim under federal law, the allegations must be consistent. *See, e.g., U.S. ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc.*, 972 F. Supp. 2d 1317, 1329 (N.D. Ga. 2013) (dismissing claim because "upon closer examination, it becomes clear that these allegations are internally inconsistent, which the Court need not accept as true"); *Shack v. Jenkins,* No. 16-1626, 2017 WL 1017133, at *2 (N.D. Ala. Feb. 23, 2017) ("courts need not accept as true 'internally inconsistent factual claims'"); *cf. Simple Helix, LLC v. Relus Techs., LLC*, No. 20-453, 2020 WL 7401592, at *11 n.9 (N.D. Ala. Dec. 17, 2020) (plaintiff's "allegations foreclose any plausible claims that

[defendant] breached a contractual duty") *Roberson Excavation, Inc. v. Dale Cty. Water Auth.*, No. 15-939, 2016 WL 5799051, at *7 (M.D. Ala. Sept. 9, 2016) (plaintiff "plead[s] himself out of a claim by including unnecessary details contrary to his claims").

Focusing on what Plaintiffs allege was *disclosed*, Plaintiffs identify only nine lines of code in the January 2021 webinar presentation notebook (and the output shown below each line), and each of those lines of code can be traced nearly verbatim to Wolfram's preexisting documentation, or merely demonstrates built-in functions for rearranging and displaying data. (Undisp. Facts ¶¶ 5-14, 42-49.) Plaintiffs do not allege—and the undisputed facts establish that they *cannot* allege—the required elements for these lines of code to disclose a trade secret.

To prevail on a claim for misappropriation of a trade secret under the DTSA, a plaintiff must demonstrate that "it (i) 'possessed information of independent economic value' that (a) 'was lawfully owned by' the plaintiff, (b) for which the plaintiff 'took reasonable measures to keep secret,' and (ii) the defendant 'used and/or disclosed that information' despite (iii) 'a duty to maintain its secrecy.'" *S. Field Maint. & Fabrication LLC v. Killough*, No. 18-0581, 2018 WL 4701782, at *2 (M.D. Ala. Oct. 1, 2018). A "plaintiff must do more than just identify a kind of technology and then invite the court to hunt through the details in search of items meeting the statutory definition." *NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc*., No. 17-8829, 2020 WL 2836778, at *14-15 (N.D. Ill. May 31, 2020) (DTSA claim failing where the plaintiff did not parse out its alleged trade secret from the public functionality of source code). [3]

---

[3]In addition to the DTSA claim, Plaintiffs inexplicably seek to apply the ITSA (Am. Compl. (Doc. 47) ¶122) rather than the Alabama Trade Secret Act ("ATSA"). To resolve choice-of-law questions in trade secret actions, Alabama applies the law of the "state in which the plaintiff suffered the economic impact." *Movie Gallery US, LLC v. Greenshields*, 648 F. Supp. 2d 1252, 1262 (M.D. Ala. 2009). Accordingly, Alabama law should govern Plaintiffs' trade secrets claim given Cent allegedly suffered their economic impact in Alabama (Am. Compl. (Doc. 47) ¶¶12-13), not Illinois. However, the DTSA's definitions of "misappropriation" and "trade secret" are substantially similar to the definitions in the ITSA and ATSA. *Compare* 18 U.S.C. § 1839(3)

Here, the lines of code at issue are not even Plaintiffs' information—they are derived from Wolfram's own documentation. (Undisp. Facts ¶¶ 5-11, 42-47.) Plaintiffs have no control over it and cannot keep it secret. Plaintiffs vaguely suggest that their trade secrets are hiding in plain sight in some combination of Wolfram's built-in commands, or perhaps the specific options used, but Plaintiffs never allege how this could be so, and based on indisputable evidence it is not so. (Undisp. Facts ¶¶ 12-15; 42-49.) Even the document from which cells were alleged "copied" was Wolfram's document, not Plaintiffs'. (Undisp. Facts ¶ 50.)

The allegations and undisputed facts here are indistinguishable from those in *Nimbus Technologies, Inc. v. SunnData Products, Inc.*, No. 04-0312, 2005 WL 6133373 (N.D. Ala. Dec. 7, 2005), in which the Court granted defendants' motion for summary judgment on plaintiff's trade secret claim where the plaintiff failed to establish the information it sought to protect met the definition of a trade secret, including failing to establish that it owned the trade secret. *Id.* at *16-17. In *Nimbus*, the Court explained that "[t]he fact that the information, schematics, and drawings may have been a trade secret to [Defendant] does not mean that [Plaintiff] can claim rights to the very same information as a trade secret of its own." *Id.* at *17. Here, Plaintiffs have established neither that the lines of code are trade secrets nor that they are owned by Plaintiffs. As in *Nimbus*, the Court should enter judgment on Plaintiffs' insufficient claim. *See also Bell Aerospace Servs., Inc. v. U.S. Aero Servs., Inc.*, 690 F. Supp. 2d 1267, 1273 (M.D. Ala. 2010) (entering summary judgment for defendant on Alabama trade secret claim where plaintiff never made "clear what trade secrets it possesses", because "in order to hold any defendant liable for

*with* Ala. Code §§ 8-27-2(1), 8-27-3 and 765 ILCS 1065/2(b), (d); *see also S. Field Maint. & Fabrication LLC,* 2018 WL 4701782, at *2-3 (comparing the DTSA and the ATSA); *Packaging Corp. of Am., Inc. v. Croner*, 419 F. Supp. 3d 1059, 1071 (N.D. Ill. 2020) (because the DTSA claim failed, the ITSA claim necessarily failed). Thus, regardless of which state's statute applies, Plaintiffs' state trade secret claim will fail for the same reasons the DTSA claim fails.

misappropriating trade secrets, [the plaintiff] must first establish that it maintained trade secrets, as defined [by the trade secret statute], and that those secrets are at issue in this case"); *American Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502*, 315 F. Supp. 3d 1044, 1058-60 (N.D. Ill. 2018) (entering summary judgment on ITSA claim where much of alleged trade secret information was publicly available); *Web Commc'ns Grp., Inc. v. Gateway 2000, Inc.*, 889 F. Supp. 316, 319-20 (N.D. Ill. 1995) (entering summary judgment on ITSA claim because information could not be a trade secret because it was "well-known and used" in the industry, and the plaintiff's minor improvement to such information did not transform the information into a trade secret).

In sum, there is no factual dispute regarding what was disclosed in the webinars, as Plaintiffs have the videos and the relevant materials. (Undisp. Facts ¶ 3.) Plaintiffs make a surplus of conclusory allegations, but at no point do they identify a plausible trade secret (or even confidential information) that was disclosed. Accordingly, the Court should enter judgment in Wolfram's favor as to Plaintiffs' claims based on their trade secret disclosure theory.

**B.      Plaintiffs fail to state a plausible claim under their fallback theory that Wolfram incorporated Plaintiffs' trade secrets into Wolfram's software, and the undisputed evidence establishes that it did not happen.**

Rather than confront the implications of the undisputed fact that Wolfram disclosed nothing other than its own preexisting built-in commands, Plaintiffs appear to pivot to a different theory in which Wolfram somehow incorporated Plaintiffs' trade secrets into Wolfram's own software. (Undisp. Facts ¶¶ 19-21; *but see* Pl.'s Resp. to Int. No. 8 (Evd. Ex. 23) at 2: "Plaintiff does not contend that a misappropriation occurred by making any changes to the source code, functionality, or features.") Nevertheless, Plaintiffs again fail to state a plausible claim because Plaintiffs do not allege what Wolfram changed in its own software based on Plaintiffs' (unidentified) trade secrets, which is itself a sufficient reason to enter judgment against Plaintiffs.

*See Next Commc'ns, Inc. v. Viber Media, Inc*., 758 F. App'x 46, 49-50 (2d Cir. 2018) (affirming district court's grant of summary judgment in favor of the defendant on the trade secret claims where the plaintiff's definition of the trade secret kept shifting, where it lacked particularity, and where the plaintiff's evidence consisted of "vague labels, rudimentary graphics, and high-level concepts"); *Capricorn Mgmt. Sys., Inc. v. Gov't Emps. Ins. Co*., No. 15-2926, 2019 WL 5694256, at *16 (E.D.N.Y. July 22, 2019) (summary judgment granted; "[m]erely listing various functions without evidence of how these functions work together in a unique and valuable way is insufficient to warrant trade secret protection").

Moreover, three independent lines of indisputable evidence justify summary judgment for Wolfram on Plaintiffs' fallback theory:

*First*, Wolfram's software is commercially available, and Plaintiffs themselves are licensed users of the software. (Undisp. Facts ¶ 22.) Still further, Wolfram made prior versions of its software available for comparison purposes. (Konieczny Decl. (Evd. Ex. 1) ¶ 10; Schacht Decl. (Evd. Ex. 2) ¶ 12.) Thus, there is no reasonable factual dispute regarding what Wolfram's software does—Plaintiffs have all they need to identify any changes in Wolfram's software that they contend incorporate Plaintiffs' trade secrets. The fact that Plaintiffs have not done so is grounds for summary judgment in Wolfram's favor.

*Second*, for Wolfram to incorporate trade secrets into its own software, it first must have obtained such trade secrets from Plaintiffs, but Plaintiffs never provided anything to incorporate. In the only source code allegedly provided to Wolfram by Plaintiffs, Plaintiffs again utilize Wolfram's own built-in commands for accessing Bloomberg Terminal data—just Wolfram's own prior generation "BloombergLink" commands. (Undisp. Facts ¶¶ 28-30.) Plaintiffs also failed to identify any deliverable from Wolfram's consulting services that now is incorporated into Wolfram's software. Thus, Plaintiffs failed to allege they provided anything to add.

*Third*, as is evident from the absence of material changes in Wolfram's source code, Wolfram in fact did not change any of the functionality of either the BloombergTerminal service connection or the BloombergLink built-in commands since Plaintiffs allegedly began to disclose their purported trade secret information on November 27, 2020. (Undisp. Facts ¶¶ 23-26.) Plaintiffs admit that a change to Wolfram's software must be reflected in the source code. (30(b)(b) Dep. of Plaintiffs (Evd. Ex. 24) at 344:17-20.) Nevertheless, Plaintiffs failed to identify any files or functionality that changed in any relevant way. (Undisp. Facts ¶¶ 22, 51-52.)

For the avoidance of all doubt, Wolfram has run a notebook based on the notebook from which Plaintiffs contend material was copied into the January 2021 webinar in all relevant versions of Wolfram's software, including a version released before Cent had anything to do with Wolfram and one released after Wolfram's work for Cent concluded—and with Wolfram's Development Bloomberg license. It worked. (Undisp. Facts ¶ 53.)

In sum, the scenario that Plaintiffs vaguely suggest simply did not happen, and summary judgment is warranted. *See DropzoneMS, LLC v. Cockayne*, No. 16-2348, 2019 WL 7630788, at *11 (D. Or. Sept. 12, 2019) (granting summary judgment for defendants where the plaintiff did not "even attempt to isolate its trade secrets in the [defendants'] source code"); *Brookhaven Typesetting Servs., Inc. v. Adobe Sys., Inc.*, No. 01-20813, 2007 WL 2429653, at *10-11 (N.D. Cal. Aug. 24, 2007) (summary judgment entered for defendant where source code revealed that there were "no indications of similarities between" the parties' programs).

For all these reasons, the Court should grant summary judgment in Wolfram's favor on Plaintiffs' claims based on the purported incorporation of a trade secret into Wolfram's software.

**C.** **Plaintiffs' various circumstantial allegations of wrongdoing cannot be reconciled with indisputable evidence.**

In the amended complaint and throughout discovery, Plaintiffs added irrelevant allegations and contentions to suggest that something must be amiss, but these also fail to adequately allege a violation of trade secret law (or breach of the non-disclosure agreement), and they cannot overcome the indisputable evidence Wolfram has provided.

*First*, Plaintiffs suggest that Wolfram could not have developed its built-in commands without using Plaintiffs' license to access Bloomberg Terminal data and that Wolfram has not "provided proof of a Bloomberg Terminal License agreement on or before the 'Alleged' release date … in 2019." (Am. Compl. (Doc. 47) ¶¶ 68, 117.) Contrary to Plaintiffs' conclusory allegations, in fact Wolfram has disclosed its Bloomberg Development License, which Wolfram's developers used to develop the BloombergTerminal service connection in 2018 for release in 2019. (Schacht Decl. (Evd. Ex. 2) ¶ 15; Sep. 10, 2011 Bloomberg Development License Schedule of Services (Evd. Ex. 19); Chandurwala Decl. (Evd. Ex. 3) ¶¶ 9-10.) The output cells in the January 2021 webinar that Plaintiffs raise as an issue merely show excerpts of market data available to anyone with a license, including Wolfram (Undisp. Facts ¶ 49.)

*Second,* Plaintiffs provide an example of how their trade secrets could be hiding in plain sight: "the manner in which Cent combines real-time and historical data analysis across an entire market using multiple data sources for the purposes of constructing dynamic trading portfolios is novel." (Am. Compl. (Doc. 47) ¶ 3.) Putting aside that nothing like this was disclosed by Wolfram in the January 2021 webinar or elsewhere, not even Plaintiffs' own employee considered that a trade secret—it is undisputed that Plaintiffs' employee posted to Wolfram's publicly available community forum the question "Does anyone have existing code that takes in historical data from [B]loomberg and updates and visualizes the live ticks coming in on the

InteractiveTradingChart? Basically emulating a live chart that will even update any indicators that are on the chart as well?" (Undisp. Fact ¶ 36.) Prior to this litigation, it is thus undisputed that Plaintiffs considered such information to be in the public domain and that they invited public assistance, which they received. (*See* Nov. 2020 Luke Jennings Wolfram Community Q&A, "Visualizing the live tick with Bloomberg Terminal & InteractiveTradingChart" (Evd. Ex. 20).)

*Third,* Plaintiffs attribute great significance to their contention that lines of code they identified in the January 2021 webinar notebook were copied from another notebook that the same Wolfram employee sent to Plaintiffs in late-December 2020. (Am. Compl. (Doc. 47) ¶¶ 2, 92, 95.) These allegations are highly misleading, as Plaintiffs refer to the source of these lines as *Plaintiffs*' notebook, even though the notebook was provided *by* Wolfram *to* Plaintiffs. (Undisp. Facts ¶ 50.) Nevertheless, Plaintiffs ignore the *content* of these lines of code, which, as described above, is not trade secret or confidential information. (Undisp. Facts ¶¶ 4-15; 42-49.) In other words, the *content* of these lines of code is derived not from information Plaintiffs provided to Wolfram, but rather from Wolfram's preexisting documentation. It makes no difference whether non-confidential, non-trade secret information was subsequently "copied."

For all the foregoing reasons, the Court should enter judgment in Wolfram's favor regarding Plaintiffs' trade secret disclosure (and breach of non-disclosure agreement) claims.

**D.    Plaintiffs still fail to assert any plausible claim for breach of the consulting agreement, based on the plain language of the agreement.**

Finally, Plaintiffs' allegations in the amended complaint regarding breach of the consulting agreement (Count II) fare no better than they did in the original complaint.[4]

---

[4] Alabama applies the law of the state where the contract is made, except when it includes a choice-of-law provision. *Colonial Life & Accident Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004). The agreement contains no choice-of-law provision. Wolfram assumes Alabama law applies, but there is no relevant difference between Alabama and Illinois.

In Count II, Plaintiffs allege that Wolfram breached the consulting agreement because "Wolfram's deliverable work (the 'milestones/tasks') under the consulting agreement has been slower than anticipated, and now Wolfram has ceased (or appears to have ceased) performing any meaningful work at all." (Am. Compl. (Doc. 47) ¶ 116.) Plaintiffs allege that Wolfram breached by "failing [to] deliver the 'milestone's tasks' as agreed" and "ceasing to perform work." (*Id.* ¶ 119.) Plaintiffs' allegations are contrary to the consulting agreement's terms.

As explained in Wolfram's original motion to dismiss, the consulting agreement does not provide deadlines for milestones or tasks or require Wolfram to perform work at Plaintiffs' pleasure. Wolfram agreed to "provide technical consulting Development Support … to Cent Holding … by assigning one or more designated contractor(s) … to work as request is made by the Customer during the period of this Statement of Work." (Technical Consulting Development Support Contract (Evd. Ex. 21) at 1.) The agreement states that "[t]his work will be … advisory or collaborative in nature and Wolfram will not have responsibility for the accuracy or efficiency of any code provided by Wolfram as part of the [Development Support]." (*Id.*) Requests for work must be made in writing in a specific way, and—critically—Wolfram may accept or reject such requests for any reason "deemed important." (*Id.*) Further, the agreement expressly disclaims "any specific deliverable." (*Id.*) In sum, the consulting agreement is an agreement for Wolfram to provide contractors on an hourly basis to work on to-be-agreed-upon projects in an "advisory or collaborative nature," without guarantees of deadlines or deliverables.

## V.     CONCLUSION

For the foregoing reasons, Wolfram respectfully requests that the Court enter judgment in Wolfram's favor and against Plaintiffs on all counts of the Amended Complaint.

Date: March 25, 2022

Respectfully submitted,

**WOLFRAM RESEARCH, INC.**

By:s/ *Floyd D. Gaines*
      One of Its Attorneys

Bradford P. Lyerla
Daniel I. Konieczny
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle Street. 7th Floor
Chicago, IL 60604
Telephone: (312) 762-9450
edocket@tdrlawfirm.com

Floyd D. Gaines
Daniel B. Snyder
GAINES LLC
2160 Highland Avenue South, Suite 101
Birmingham, Alabama 35205
fgaines@gainesllc.com
dsnyder@gainesllc.com
Office Number:      205.598.5055
Fax Number:      205.598.5066
Floyd Gaines Direct:  205.598.5089
Daniel Snyder Direct: 205.598.5076
*Counsel for the Defendant*